UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE A. LARIE,
    *Plaintiff*,
v.                              CASE NO. 14-CV-11108

COMMISSIONER OF           DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 17) be denied, that Defendant's Motion for Summary Judgment (doc. 19) be granted, and the decision of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 17, 19.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff protectively filed an application for a period of disability and DIB on July 19, 2010, alleging that he became unable to work on February 15, 2008. (Transcript, Doc. 13 at 145.) Plaintiff later amended his alleged onset date to April 4, 2008.[3] (Tr. 76, 205.) Plaintiff's initial applications were denied. (Tr. 78-93, 94) On August 8, 2011, Plaintiff appeared at a hearing before Administrative Law Judge (ALJ) Craig R. Petersen, who considered the Plaintiff's claims *de novo*. (Tr. 30, 35.) In a decision dated August 18, 2011, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through June 30, 2010, the date last insured. (Tr. 30.) Plaintiff requested Appeals Council review of this decision. (Tr. 18-19.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 5, 2014, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) On March 14, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence

---

[3] In his brief, Plaintiff points out that the "ALJ mistakenly indicates that the amended onset date is April 4, 2010." (Doc. 17 at 5; tr. 76.) The ALJ's decision includes some references to an alleged onset date of April 4, 2010, instead of April 4, 2008. (Tr. 23, 30.) The correct 2008 date is also referenced within the same decision and the ALJ's consideration of evidence from the time period from 2008 forward is evidence that the correct amended onset date, April 4, 2008, was considered in determining this case and that the references to a 2010 alleged onset date are a typographical error. (Tr. 25, 27.)

2

as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a

party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.     Governing Law**

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2010, and had not engaged in substantial gainful activity from April 4, 2008, the amended alleged onset date, through his date last insured, June 30, 2010. (Tr. 25.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral shoulders and obesity were "severe" and his right knee pain, right hip pain and gastroesophageal reflux disease were non-severe within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 25-26.) The ALJ found that Plaintiff had the residual functional

capacity (RFC) to perform light work as defined in the Regulations[4] with the following additional limitations:

> [H]e can lift/carry up to 20 pounds occasionally and 10 pounds frequently. He can push/pull up to 10 pounds occasionally. He can stand/walk up to a total of 4 hours during an 8-hour workday, and sit up to 6 hours during an 8-hour workday with normal breaks. He needs the option to sit or stand at will. The claimant can occasionally stoop, kneel, crouch, and crawl. He cannot work overhead. He has no environmental, visual, or communicative limitations. He is limited to simple, routine, and repetitive tasks with few, if any work related decisions or changes in work routine. He has no social deficits. (Tr. 26.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as an auto body repairer (Dictionary of Occupational Titles (DOT) code 807.381-030, medium in exertion and skilled with a specific vocational preparation (SVP) level 7) or metal fabricator (DOT code 619.361-014, heavy, skilled with an SVP 7). (Tr. 29.) At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education and past work experience, Plaintiff could perform jobs that existed in significant numbers in the national economy. (Tr. 29.) At step five, the ALJ found that Plaintiff was not suffering from a disability under the Social Security Act at any time from April 4, 2008, through June 30, 2010, the date last insured. (Tr. 30.)

### E. Administrative Record

Plaintiff was 53 years old at the time of the hearing. (Tr. 39.) Plaintiff has a GED. (Tr. 41.) At the hearing, Plaintiff confirmed that he can read a newspaper, add and subtract simple numbers and make change. He is right-handed, 5 foot 11 and ½ inches tall and weighs two hundred and ten pounds. (Tr. 43.) Plaintiff testified that he last worked at a heavy steel fabrication plant and on

---

[4] Light work is defined as
[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

February 15, 2008, he was injured at work when he was hit with a piece of steel. (Tr. 44.) He received workers' compensation benefits following the injury, and then received a settlement. (Tr. 64-65.) He also testified that he received unemployment insurance benefits after February 2008, for which he had to certify that he was able and available to work and seeking work. (Tr. 65-66.)

Plaintiff testified about his work history. He worked as a fabricator in his most recent job where the most weight he had to lift was 120 pounds. (Tr. 45.) Prior to that, he was self-employed in construction, where he lifted and carried between 50 to 75 pounds. (Tr. 46.) He has experience working in an auto body shop, both running his own business and working for someone else. (Tr. 46, 50.) He also had a job performing industrial painting, which required lifting and carrying between 50 and 75 pounds. (Tr. 48.)

Plaintiff complained that his back bothers him and he has pain in his shoulders, though the left shoulder is worse than the right, as well as pain in the neck, right knee and hip, and elbow. (Tr. 51-54.) Plaintiff described soreness in both shoulders and pain in his left shoulder that goes into his shoulder blade and collarbone. (Tr. 55.) He testified that his neck started bothering him around February 17, 2008, and the shoulders on February 15, 2008. (Tr. 52-53.) When asked if he had any emotional or mental impairments, Plaintiff answered, "A little bit of depression every once in a while . . . ." yet he confirmed that he did not think it was anything consistent. (Tr. 54.) At the time of the hearing he was taking no medication other than aspirin and he tried to lay down a lot to relieve his symptoms. (Tr. 54, 56.) He explained that he had been taking two prescribed narcotic pain medications for about a year and a half in the past, yet stopped taking these when he was "let loose from – . . . couldn't see the doctors anymore." (Tr. 54.)

Upon questioning by the ALJ, Plaintiff testified that he did not really know how much he could lift, explaining that his wife helps him with showering and lifting things around the house.

7

He explained that he had not lifted anything more than a coffee cup or dinner plate. (Tr. 56-57.) Similarly, he did not know how far he could walk, explaining that if he did any walking it was inside the house, and as to how long he could stand, he responded that it "depends on the amount of pain and also kind of goes with the weather." (Tr. 57.) He testified that he both sits and stands to watch television. (Tr. 57.) Plaintiff testified that "once in a while" he mows the lawn with a push mower that has a twenty-two inch blade. (Tr. 59.) He described mowing as a 15 minute job that he does every two to three weeks. (Tr. 59.) Plaintiff testified that he plays cards and board games once in a while. (Tr. 63.) He testified that he has no trouble with his memory. (Tr. 64.) He explained that since February 2008, he has looked for "easy" work, yet he does not believe he could work an eight-hour day because he is sore in the morning, he does not sleep well, and he has not found a job that will allow him to take naps. (Tr. 64.)

Upon questioning by his attorney about how long he could stand at any one time, Plaintiff testified that he would "probably go like on a (sic) hour by hour basis and sometimes not even an hour. Sitting just puts pressure on my hip and standing also puts pressure on the, on the hip." (Tr. 66-67.) He testified that he has been using a brace on his right knee since February 15, 2008, and uses a cane "from time to time." (Tr. 67.) He testified that he naps twice a day from an hour to two and a half hours. (Tr. 67.) Plaintiff explained that he has had steroid shots in both shoulders, his hip and knee, and attended physical therapy in an attempt to keep him "loose" prior to recommended surgeries that were later cancelled. (Tr. 68-69.)

A vocational expert (VE) also testified at the hearing. (Tr. 69.) The VE testified that Plaintiff's work as an auto body repairer was medium in exertion and skilled pursuant to the Dictionary of Occupational Titles (DOT) and was heavy to very heavy in exertion based on Plaintiff's testimony. (Tr. 71.) Plaintiff's work as a metal fabricator was heavy in exertion and

skilled per the DOT and as performed, and his work as a house builder, DOT code 869.281-014, was medium in exertion and skilled with an SVP of 7 per the DOT, and heavy in exertion and skilled as performed. (Tr. 71.)

The ALJ asked the VE to consider an individual of Plaintiff's age, education and work history who is able to:

> [L]ift and carry up to 20 pounds occasionally, 10 pounds frequently, can push and pull up to 10 pounds occasionally, stand or walk up to four hours out of an eight-hour day, sit up to six hours out of an eight-hour day with normal breaks, can occasionally stoop, kneel, crouch and crawl. There would be no overhead work, there are no environmental, visual . . . or communication limitations. No limitations with regards to concentration, persistence and pace and no social deficits. Now based on that hypothetical could this person perform the past relevant work? (Tr. 71-72.)

The VE testified that the exertional levels for the past work exceed that of the light limitation. (Tr. 71.) He testified that such an individual could perform jobs such as production inspection (DOT code 559.687-074) with 3,000 positions in the region defined as the lower peninsula of Michigan, packaging (DOT 920.687-166) with 3,500 positions in the region, or greeter (DOT 358.677-010) with 1,500 positions in the region. (Tr. 70, 72-73.)

The ALJ asked the VE to consider the prior hypothetical with the additional limitation to jobs that allow a sit/stand option at will and work that "would be limited to simple routine and repetitive tasks, work would involve work related decisions with few if any work place changes. And there would be only occasional pushing and pulling bilateral (sic)." (Tr. 73.) The VE testified that the number of greeter positions would not change, the inspection jobs would be reduced to 2,500 positions and the packager would be reduced to 3,000 positions. (Tr. 73.) Finally, the ALJ asked the VE to consider either of the first two hypothetical questions with the additional limitation that the individual would be "off task 20 percent or more of any work day and miss three

9

or more days per month due to ongoing physical impairment." (Tr. 73.) The VE testified that either of those limitations are "work preclusive even by themselves, . . . ." (*Id.*)

The medical evidence shows that Plaintiff was diagnosed in 2008 with a labral tear of the left shoulder and AC joint disruption with impingement syndrome of the right shoulder following a job site injury on April 4, 2008. (Tr. 209, 212, 220.) The injuries also included his right shoulder and elbow. A June 2008 MRI showed "marked AC joint disruption bilaterally," but also that "[t]here doesn't appear to be a lot else wrong on the MRI." (Tr. 212.) Plaintiff had undergone physical therapy without significant improvement and surgery was recommended at that time, including acromioplasty and AC joint resection. (Tr. 209.)

Plaintiff also had a right knee injury at work in February 2008, after which he was able to continue working. (Tr. 212, 234-36.) Following the knee injury, Plaintiff reportedly felt able to carry out his job duties without formal restrictions, though the doctor suggested he be allowed to sit whenever he is able during the week following the injury. (Tr. 234.) Plaintiff was prescribed a hinged knee support but stopped using it because it was causing irritation and was then given an elastic knee support instead. (Tr. 240.) An MRI of the right knee revealed a small amount of joint fluid that may be more than normal "suggesting a small effusion is noted," and "some minimal inhomogenous signal intensity in the medial aspect of the posterior articular surface of the patella that could be seen with very mild chondromalacia in the proper clinical setting." (Tr. 249.)

X-rays taken in 2008 of the right elbow revealed spurring "off the proximal ulna posteriorly at the olecranon process inferiorly and superiorly." (Tr. 264.) A May 2008 MRI of the right elbow was "[e]ssentially normal." (Tr. 273.) On July 31, 2008, Scott D. Burgess, M.D., noted that MRIs of the shoulders revealed "a little bit of cuff tendinopathy bilaterally" and "[n]o evidence of partial or full thickness tearing," no labral or biceps pathology, and only "[a] little AC arthritis present

bilaterally." (Tr. 309.) Dr. Burgess also noted in July 2008 that Plaintiff demonstrated "significant symptom magnification and pain behavior on examination." (Tr. 308.) The same doctor noted "symptom magnification on strength testing" at a later exam. (Tr. 311.) In September 2008, one of Plaintiff's doctors noted conditions of right knee chondromalacia and right hip greater tronchanteric bursitis and gluteus medius tendinitis. (Tr. 292.) In 2008, Plaintiff was taking Vicodin 750 mg three to four times per day. (Tr. 221.)

Treatment notes for the shoulders end with October 28, 2008, and the next medical records were for an emergency department visit on February 28, 2009, for complaints of chest pain with shortness of breath. (Tr. 316.) Plaintiff was diagnosed with atypical chest pain, gastroesophageal reflux and alcohol intoxication. (Tr. 317.) He presented again on March 2, 2009 with similar complaints and was again intoxicated. (Tr. 328.) Stress tests were negative and no symptoms were reported with stress testing. (Tr. 331.) Plaintiff reported to the emergency department on March 6, 2009 for chest pain, and was again diagnosed with chest pain, nonspecific, and alcohol intoxification. (Tr. 343.) Plaintiff also reported with chest pain on June 15, 2009. (Tr. 349-51.) In August 2010 Plaintiff reported to the emergency department for chest pain and was diagnosed with chest pain with shortness of breath, tachycardia, alcohol intoxication and elevated D-dimer. (Tr. 327-39.)

Plaintiff underwent a state agency medical examination on October 4, 2010, with Andrew Sears, M.D. (Tr. 358-365.) Dr. Sears noted that Plaintiff did not use a cane, and ambulated quite normally, "often with a slight limp." (Tr. 359.) He was tender in both shoulders, the right knee and right hip. (Tr. 359.) He was diagnosed with bilateral shoulder pain, pain in the right hip and pain in the right knee. (Tr. 360.) The doctor noted that Plaintiff was able to engage in all the listed physical activities, including sitting, standing, bending, carrying, and pushing, yet complained of

11

pain in the right hip and knee with stooping, squatting and arising from a squat. (Tr. 362.) The doctor noted that clinical evidence supported the need for a walking aid to reduce pain and because it was "Needed; Would Fall Without Aid; Clinically Req'd." (Tr. 363.)

### F. Analysis

Plaintiff argues that the ALJ erred as a matter of law in assessing his credibility, specifically with regard to Plaintiff's testimony that he cannot lift more than ten pounds. (Doc. 17 at 15.) Plaintiff also argues that the ALJ failed to evaluate his depression pursuant to 20 C.F.R. § 404.1520a. (Doc. 17 at 18.)

**1.      Whether The ALJ's Credibility Findings Are Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to properly evaluate his credibility, specifically his allegation that he cannot lift more than ten pounds. Plaintiff argues that this is relevant because if he is found to be able to lift no more than ten pounds, he would be limited to sedentary exertion work and, pursuant to the Medical-Vocational Guidelines (the GRID), he would be found disabled based on his age, education and a lack of transferable skills. *See* 20 C.F.R. Pt. 404, Subpt., App. 2, § 201.14.

The ALJ is required by the Regulations to explain his credibility determination with respect to Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p.

12

To the extent the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41. Relevant factors to be considered include the following: daily activities, location, duration, frequency and intensity of pain and other symptoms, precipitating and aggravating factors, medicine including the type, dosage, effectiveness and side effects, treatment for relief of pain or other symptoms, any measures used to relieve pain, and "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In his brief, Plaintiff argued that "[Plaintiff] testified that he does not lift more than ten pounds" and cites Transcript pages 56-57 in support. (Doc. 17 at 11.) The following exchange took place at the hearing when Plaintiff was questioned about how much weight he can lift:

> Q [ALJ]: Okay. Now how much do you think you can lift and carry in pounds?
>
> A [Plaintiff]: I really – don't really know, I don't really test that too much on a daily basis. You know, I know I get my coffee and I can – I get dressed. My wife has to help me shower because I can't wash my back, I can't put my arms back and I can't raise them.
>
> Q [ALJ]: Have you ever lifted a bag of sugar or a bag of flour or a bag of dog food or anything like that?
>
> A [Plaintiff]: My wife does all that.
>
> Q [ALJ]: So you've not lifted anything more than a coffee cup?
>
> A [Plaintiff]: Or a dinner plate. (Tr. 56-57.)

13

Contrary to Plaintiff's credibility argument, nowhere in the testimony did Plaintiff actually testify that he cannot lift more than ten pounds. Neither did he answer this question in his Function Report where he noted that it "depends on the amount of pain" he has. (Tr. 178.) Although he testified that he has not lifted bags of sugar, flour or dog food, he never testified that he cannot do so. For example, when asked about doing the dishes, the reason he gave for not washing dishes was that he has not done dishes since he has been married. (Tr. 58.)

There is no requirement that the ALJ consider the credibility of a statement that was simply never made in the record. Nor was there enough information in Plaintiff's testimony to conclude or imply he cannot lift more than ten pounds. Despite Plaintiff's testimony at the hearing that he did not know how much weight he can lift, the ALJ properly considered other evidence of record to determine how much weight Plaintiff could lift and /or carry and the severity of his complaints of pain and other symptoms. For example, the ALJ considered Plaintiff's activities of daily living. Though Plaintiff testified to very limited activities, the activities included mowing the lawn regularly every two to three weeks with a push lawnmower. (Tr. 28.) The ALJ also considered Plaintiff's medication, which at the time of the hearing, involved only over-the-counter pain relievers. (Tr. 28.) The ALJ noted that Plaintiff "required no more than over the counter medications for his pain," yet he also properly considered Plaintiff's self-report in October 2010 that Plaintiff was not taking pain medication due to a lack of insurance. (Tr. 28, 358.) In his function report Plaintiff reported that he was "cut off of all" his medications. (Tr. 180.) The ALJ may properly consider the type of medication or treatment for pain when considering the severity of symptoms. Despite Plaintiff's complaint of a lack of insurance, Plaintiff made multiple emergency room visits for complaints of chest pain in 2009, yet did not seek treatment for pain

14

relief or his existing physical impairments. The ALJ properly considered the record in full and explained his credibility determination, which is supported by substantial evidence.

Plaintiff's argument in substance appears to be whether the ALJ's finding that Plaintiff can perform the lifting and/or carrying requirements of light work, ten to twenty pounds, is supported by substantial evidence. Consultative evaluator Eric VanderHaagen, D.O., completed a physical residual functional capacity assessment dated November 1, 2010. (Tr. 86-88.) Dr. VanderHaagen had the benefit of Dr. Sears's October 2010 consultative examination report as well as the other medical evidence of record. (Tr. 83, 358-65.) Dr. VanderHaagen concluded that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday, has pushing and pulling limitations consistent with the weight limits set forth for lifting and carrying, may only occasionally climb ramps or stairs, kneel, crouch or crawl, may only frequently balance or stoop, and may never climb ladders, ropes or scaffolds. (Tr. 87.) He further opined that Plaintiff was limited in overhead reaching with the bilateral upper extremities to only occasional, and limited in reaching in front or laterally to frequent, rather than constant. (Tr. 88.) He did not find that Plaintiff required the use of an ambulatory aid. The ALJ gave this opinion some weight, explaining that it was consistent with the preponderance of the evidence. (Tr. 28.) Dr. VanderHaagen's opinion is substantial evidence in support of the ALJ's RFC, specifically the weight limitation challenged by Plaintiff.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The VE's testimony is

substantial evidence supporting the ALJ's finding that Plaintiff could perform a substantial number of jobs in the economy.

## 2. Whether The ALJ Properly Evaluated Plaintiff's Allegation Of Depression

Plaintiff argues that the ALJ never made the required finding as to whether his depression was severe. Defendant argues that other than Plaintiff's testimony that he has "a little bit of depression every once in a while," the record does not evidence a mental impairment. (Tr. 54.) Defendant also argues that throughout the administrative process, Plaintiff has failed to allege any work-related mental limitations. (Doc. 19 at 9; tr. 165.)

In his decision, the ALJ considered Plaintiff's allegation of depression as follows:

> At the hearing, the claimant complained of pain and depression. The undersigned limited the claimant to only simple, routine, and repetitive tasks with few, if any work related decisions or changes in work routine due to pain and depression affecting the claimant's ability to concentrate. The undersigned found no social deficits. (Tr. 28.)

Plaintiff is correct that the ALJ did not follow the evaluation procedure for mental impairments as set forth in the Regulation. A mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a [plaintiff's] statement of symptoms." 20 C.F.R. § 404.1508. To evaluate the severity of a mental impairment or impairments, first, the fact finder must evaluate the symptoms, signs and laboratory findings to determine whether there is a medically determinable impairment. *See* 20 C.F.R. § 404.1520a(b)(1). The Regulations require that if it is determined that there is a medically determinable mental impairment, the fact finder "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings . . . ." 20 C.F.R. § 404.1520a(b)(1). Next, the fact finder rates the "degree of functional limitation resulting from the impairment(s)" in each of the following four areas of functioning: Activities of daily living; social

functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2), (c)(3).

Plaintiff is correct that the ALJ erred in the evaluation of his allegation of depression. Contrary to the Regulations, the ALJ set forth limitations related to an impairment for which he has identified no objective medical evidence. This is particularly relevant where the Plaintiff has past relevant work that was skilled, and the ALJ's limitations that are related at least in part to the "depression" restrict Plaintiff from performing skilled work. The ALJ made no determination at step two that there is objective medical evidence of depression, and if so, should have made the necessary finding as to whether it is a severe or non-severe impairment. Therefore, the ALJ's resultant RFC contains limitations related to depression that are not supported by substantial evidence. The error is, however, harmless where "such additional restrictions only benefitted [P]laintiff." *Herrera v. Colvin*, 2014 WL 3572227 at *5 (C.D.Cal. July 21, 2014).

Because I suggest that the ALJ's credibility determination and step five findings as related to the physical impairments are supported by substantial evidence, I do not recommend remand for the sole purpose of further addressing an alleged mental impairment for which Plaintiff has identified no supporting objective medical evidence and no evidence of record that conflicts with the ALJ's findings in this regard. If however, this case should be remanded for other reasons, nothing herein should be construed to bar further consideration of whether substantial evidence supports mental limitations.

### G. Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise.

Defendant's Motion for Summary Judgment (doc. 19) should be granted, that of Plaintiff (doc. 17) denied and the decision of the Commissioner affirmed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)(*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

    s/ *Charles E Binder*
    CHARLES E. BINDER
Dated: January 6, 2015    United States Magistrate Judge